# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) BMO HARRIS BANK N.A., a national banking association,<br><br>Plaintiff,<br><br>v.<br><br>(1) BATAK LLC, an Oklahoma limited liability company;<br><br>(2) WILLIAM GAIGE, an individual,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. CIV-16-197-R<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, BMO Harris Bank N.A., by its attorneys, complains of Defendants, BATAK LLC and William Gaige, as follows:

## THE PARTIES

1. Plaintiff, BMO Harris Bank N.A. ("BMO") is a national banking association with its main office, as set forth in its articles of association, located in Chicago, Illinois.

2. Defendant, BATAK LLC ("BATAK") is a limited liability company organized in the State of Oklahoma. On information and belief, the members of BATAK are William Gaige and Wanti Gaige, who are both residents and citizens of the State of Oklahoma. BATAK can be served at its principal office located at 1800 Kamber Terrace, Edmond, Oklahoma or through its registered agent Wanti Gaige at the same address.

3.   Defendant, William Gaige ("Gaige"), is a citizen of the State of Oklahoma. He can be served at his residence at 1800 Kamber Terrace, Edmond, Oklahoma.

## JURISDICTION AND VENUE

4.   The parties are of diverse citizenship.

5.   The amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

6.   Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

7.   Defendants reside within the judicial district known as the Western District of Oklahoma, and a substantial part of the events or omissions giving rise to the claims set forth herein occurred in said District.

8.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### The Agreements and the Guaranty

9.   On or about August 1, 2014, non-party General Electric Capital Corporation ("GECC") and BATAK entered into Loan and Security Agreement No. 7812420-001 (the "First Loan Agreement"), whereby GECC agreed to finance BATAK's purchase of the equipment described therein for use in BATAK's business, and BATAK agreed to pay GECC $22,419.36, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the First Loan Agreement, together with any amendments or modifications thereto, is attached hereto as "Exhibit 1."

10.   On or about August 15, 2014, GECC and BATAK entered into Loan and Security Agreement No. 7813764-001 (the "Second Loan Agreement"), whereby GECC

agreed to finance BATAK's purchase of the equipment described therein for use in BATAK's business, and BATAK agreed to pay GECC $39,739.20, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Second Loan Agreement, together with any amendments or modifications thereto, is attached hereto as "Exhibit 2."

11. On or about August 25, 2014, GECC and BATAK entered into Loan and Security Agreement No. 7814715-001 (the "Third Loan Agreement"), whereby GECC agreed to finance BATAK's purchase of the equipment described therein for use in BATAK's business, and BATAK agreed to pay GECC $39,723.00, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Third Loan Agreement, together with any amendments or modifications thereto, is attached hereto as "Exhibit 3."

12. On or about January 27, 2015, non-party GE Capital Commercial Inc. ("GE Capital") and BATAK entered into Loan and Security Agreement No. 7946319-001 (the "Fourth Loan Agreement"), whereby GE Capital agreed to finance BATAK's purchase of the equipment described therein for use in BATAK's business, and BATAK agreed to pay GE Capital $104,114.08, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Fourth Loan Agreement, together with any amendments or modifications thereto, is attached hereto as "Exhibit 4."

13. On or about January 27, 2015, GE Capital and BATAK entered into Loan and Security Agreement No. 7946317-001 (the "Fifth Loan Agreement"), whereby GE Capital agreed to finance BATAK's purchase of the equipment described therein for use

in BATAK's business, and BATAK agreed to pay GE Capital $104,114.08, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Fifth Loan Agreement, together with any amendments or modifications thereto, is attached hereto as "Exhibit 5."

14. On or about January 27, 2015, GECC and BATAK entered into Loan and Security Agreement No. 7946312-001 (the "Sixth Loan Agreement") whereby GECC agreed to finance BATAK's purchase of the equipment described therein for use in BATAK's business, and BATAK agreed to pay GECC $64,121.40, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Sixth Loan Agreement, together with any amendments or modifications thereto, is attached hereto as "Exhibit 6."

15. On or about February 18, 2015, GECC and BATAK entered into Loan and Security Agreement No. 7946312-002 (the "Seventh Loan Agreement") whereby GECC agreed to finance BATAK's purchase of the equipment described therein for use in BATAK's business, and BATAK agreed to pay GECC $32,117.40, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Sixth Loan Agreement, together with any amendments or modifications thereto, is attached hereto as "Exhibit 7."

16. Hereinafter the First Loan Agreement, Second Loan Agreement, Third Loan Agreement, Fourth Loan Agreement, Fifth Loan Agreement, Sixth Loan Agreement, and Seventh Loan Agreement are referred to collectively as the "Agreements."

17. For consideration of entering into the Agreements, BATAK granted GECC and GE Capital a security interest in the equipment described in the Agreements (collectively, the "Collateral").

18. To induce GECC and GE Capital into entering into the Agreements, Gaige, as guarantor, unconditionally guaranteed the past, present, and future performance of BATAK under the Agreements (the "Guaranty"). A true and correct copy of the Continuing Guaranty executed by Gaige in favor of GECC and GE Capital, dated January 27, 2015, is attached hereto as "Exhibit 8."

19. Effective December 1, 2015, GECC and GE Capital, either directly or indirectly, transferred and assigned to BMO all of their rights, titles and interests in and to their accounts with BATAK, including without limitation, the Agreements, the Guaranty, and GECC's and GE Capital's security interest in the Collateral. As such BMO is GECC's and GE Capital's successor-in-interest with respect to all rights, claims, and interests related to BATAK and Gaige with respect to this action. A true and correct copy of the Assignments and the Transfer Acknowledgements evidencing the assignment from GECC and GE Capital to BMO are attached hereto as "Exhibit 9."

20. Under the terms and conditions of the Agreements and the Guaranty, failure to make a payment when due is considered an event of default.

### Default Under the Agreements and the Guaranty

21. BATAK is in default under the Agreements for his failure to pay the amounts due thereunder.

22. More specifically, BATAK failed to make the October 1, 2015 payment due under the First Loan Agreement, the September 1, 2015 payment due under the Second Loan Agreement, the August 9, 2015 payment due under the Third Loan Agreement, the December 1, 2015 payment due under the Fourth Loan Agreement, the December 1, 2015 payment due under the Fifth Loan Agreement, the October 1, 2015 payment due under the Sixth Loan Agreement, and the October 5, 2015 payment due under the Seventh Loan Agreement. In addition, BATAK has failed to make all payments due under each of the Agreements subsequent to these dates.

23. A default of BATAK under the Agreements is a default of Gaige under the Guaranty.

24. Pursuant to the terms of the Agreements, the entire amounts due thereunder have been accelerated. The principal amount due and owing upon acceleration as of the respective dates of default is $293,898.39.

25. Under the Agreements, BATAK is obligated to pay interest on all unpaid amounts at the rate of eighteen percent (18%) per annum or the maximum rate not prohibited by applicable law.

26. In addition, under the Agreements, BATAK is obligated to pay late charges and other fees due under the Agreements.

27. In addition, under the Agreements, upon default, BATAK is obligated to pay all expenses of retaking, holding, preparing for sale, and selling the Collateral.

28. In addition, under the Agreements, BATAK is obligated to pay the attorneys' fees and costs incurred by BMO in the enforcement of its rights thereunder, including this lawsuit.

29. Calculated as of February 5, 2016, the total amount due and owing under the Agreements, not including costs of collection or attorneys' fees and expenses, totaled not less than $316,744.44. Default interest and fees continue to accrue under the Agreements.

30. BMO notified BATAK and Gaige of their defaults under the Agreements and the Guaranty and has made demand upon them to pay the amounts due under the Agreements.

31. By letters dated February 11, 2016, BMO made demand upon BATAK and Gaige to pay the accelerated amount due under the Agreements (the "Demand Letters"). True and correct copies of the Demand Letters are attached hereto as "Exhibit 10."

32. Despite demand, BATAK has failed and refused to pay the amount due and owing under the Agreements.

33. Despite demand, Gaige has failed and refused to pay the amount due and owing under the Agreements and the Guaranty.

34. Under the Agreements, BMO has the right to, with or without demand or notice, enter any premises where the Collateral may be and take possession of and remove them from the premises.

35. Prior to the filing of this lawsuit, BMO recovered possession of the Collateral.

36. Under the Agreements and the Guaranty, the parties have unconditionally waived their respective rights to a jury trial of any claim or cause of action relating thereto.

37. BMO and its predecessors-in-interest have performed any and all conditions and obligations required of them under the Agreements and the Guaranty.

## COUNT I - Breach of Contract
## (BATAK)

38. BMO incorporates and realleges all preceding paragraphs in this Count I.

39. BMO has performed all terms and conditions of the Agreements to be performed by BMO.

40. BATAK has not performed under the Agreements on BATAKs' part by, among other reasons, failing to make payments under the Agreements when those payments became due.

41. Under the Agreements, BMO is entitled to contractual money damages from BATAK as provided therein.

42. The Agreements provide that BMO shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

WHEREFORE, BMO prays that this Court enter a judgment in its favor and against BATAK in the amount due under the Agreements, the exact amount to be proven at or before trial, plus its attorneys' fees, costs, and interest, together with such other and further relief as shall be just and equitable.

## COUNT II - Breach of Contract
## (Gaige)

43. BMO incorporates and realleges all preceding paragraphs in this Count II.

44. BMO has performed all terms and conditions of the Agreements and the Guaranty to be performed by BMO.

45. Gaige has not performed under the Agreements and the Guaranty on his part by, among other reasons, failing to make payments under the Agreements when those payments became due.

46. Under the Agreements and the Guaranty, BMO is entitled to contractual money damages from Gaige as provided therein.

47. The Agreements and the Guaranty provide that BMO shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

WHEREFORE, BMO prays that this Court enter a judgment in its favor and against Gaige in the amount due under the Agreements and the Guaranty, the exact amount to be proven at or before trial, plus its attorneys' fees, costs, and interest, together with such other and further relief as shall be just and equitable.

Respectfully submitted,

*/s/ Candace Williams Lisle*
Candace Williams Lisle, OBA #9638
*cwlisle@phillipsmurrah.com*
**PHILLIPS MURRAH P.C.**
Corporate Tower, Thirteenth Floor
101 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: 405-235-4100
Facsimile: 405-235-4133

***Attorneys for Plaintiff BMO Harris Bank N.A.***

Of counsel:
Aaron B. Chapin
(subject to pro hac vice admission)
Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
Telephone: (312) 207-1000
Fax: (312) 207-6400
achapin@reedsmith.com

01001549.DOCX